# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### No. 5:14-CV-434-D

| | |
|---|---|
| NEFTALI RIVERA NIEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| JOHN M. MCHUGH, | ) |
| SECRETARY OF THE ARMY, | ) |
| | ) |
| Defendant. | ) |

On July 30, 2014, Neftali Rivera Nieves ("Rivera" or "plaintiff") filed a complaint against John M. McHugh, Secretary of the Army ("Secretary" or "defendant") seeking to correct his military records [D.E. 1].[1] On November 6, 2014, Rivera filed an amended complaint [D.E. 14]. The amended complaint alleges that defendant violated numerous military regulations, section 504 of the Rehabilitation Act, see 29 U.S.C. § 794, the Administrative Procedure Act ("APA"), see 5 U.S.C. § 706, and the Fifth Amendment. Am. Compl. [D.E. 14] ¶¶ 26–40. On November 19, 2014, defendant moved to dismiss the complaint or, in the alternative, for summary judgment [D.E. 17]. On December 12, 2014, Rivera filed a cross-motion for summary judgment [D.E. 20]. As explained below, the court grants in part and denies in part defendant's motion, and grants in part and denies in part Rivera's motion for summary judgment.

## I.

On January 30, 1986, Rivera enlisted in the United States Army ("Army"). See [D.E. 18-1] 41 (AR 36). On March 20, 2002, Rivera reenlisted in the Army. Id. 23–24 (AR 18–19). Rivera

---

[1] Although plaintiff's name is Neftali Rivera Nieves, he identifies himself as Rivera. Thus, the court refers to plaintiff as Rivera.

acknowledged that the "reenlistment is for an indefinite period and that [he] will be allowed to serve up to the retention control point for [his] current rank," which was then set as January 31, 2006. Id. 23, 41 (AR 18, 36); see [D.E. 18-2] 172–76 (AR 378–82).

Rivera was absent without leave ("AWOL") from February 6 to 11, 2004. [D.E. 18-1] 20, 52 (AR 15, 47). On March 17, 2004, Rivera received nonjudicial punishment for being AWOL. Id. 42 (AR 37); [D.E. 18-2] 33–34 (AR 239–40) (record of the Article 15 disciplinary hearing).

Rivera was again AWOL from July 31 to August 3, 2004. [D.E. 18-1] 20, 52 (AR 15, 47). On August 3, 2004, Rivera went to the Womack Army Medical Center ("WAMC") at Fort Bragg, North Carolina, with his wife. Rivera Decl. [D.E. 22] ¶ 4. While Rivera was completing intake at the hospital, a superior arrived and ordered Rivera to leave with him and undergo a command-directed urinalysis. See id. ¶¶ 4–5; [D.E. 18-1] 57, 69, 73 (AR 52, 64, 68). Rivera asserts that the superior ordered Rivera to leave with him to stop Rivera from self-referring at the hospital. [D.E. 18-1] 69 (AR 64). The urinalysis tested positive for cocaine. [D.E. 18-2] 9, 148 (AR 215, 354). The superior returned Rivera to WAMC, where Rivera remained until August 9, 2004, and where he was diagnosed, in part, as having a "cocaine dependence in sustained remission." [D.E. 18-1] 42, 69 (AR 37, 64).

On August 30, 2004, Rivera received nonjudicial punishment for being AWOL and using cocaine between July 30 and August 3, 2004. Id. 42 (AR 37); cf. id. 77–78 (AR 72–73) (noting that Rivera appealed his punishment).

On February 28, 2005, Rivera requested to be released from active duty on February 28, 2006, and to be placed on the retirement list on March 1, 2006. Id. 17 (AR 12). Rivera stated that his "current ETS," or Expiration of Term of Service, was February 8, 2006, at which point he would have twenty years of service in the Army. Id.; cf. id. 20 (AR 15) (noting that Rivera's ETS was

2

January 31, 2006); but see id. 23 (AR 18) (noting that Rivera's enlistment was for an indefinite period).

On July 3, 2005, Rivera's commander notified Rivera that he intended to recommend Rivera's discharge based on Rivera's cocaine use in 2004, two periods of being AWOL, and a citation for driving while impaired from July 2002. Id. 42 (AR 37).

On July 8, 2005, Rivera's commander notified Rivera that a separation action had been initiated based on an alleged pattern of misconduct. See id. 35, 215–16 (AR 30, 210–11). On July 13, 2005, Rivera asked the Army to withdraw the separation action and that "he be allowed to retire for years of service." Id. 42 (AR 37). On July 22, 2005, Rivera consulted with legal counsel. Id. 35 (AR 30). On August 10, 2005, Rivera was notified to appear before the administrative separation board. Cf. id. 35–36 (AR 30–31).

On August 31, 2005, Rivera asked the Army to withdraw the separation action because his commander's notification form, which recommended separation, improperly relied on records from Rivera's personnel file that were for use only in a court-martial action. Id. 204, 211 (AR 199, 206); cf. id. 114 (AR 109) (official release form, dated March 4, 2005, noting that the release of Rivera's Official Military Personnel File was "for court-martial action use only").

On September 12, 2005, Rivera was admitted to WAMC because of a "[s]uicide attempt by self-inflicted laceration of left forearm." Id. 26 (AR 21). On October 2, 2005, Rivera was released from WAMC. Id.

On September 29, 2005, while Rivera was admitted at WAMC, Rivera signed a waiver of appearance at the scheduled administrative separation board. Id. 25 (AR 20). The board then met without Rivera present. Id. 171–79 (AR 166–74). After the meeting, the board recommended Rivera's discharge under other than honorable conditions. Id. 176–78 (AR 171–73).

3

On October 26, 2005, Major General Virgil Packett reviewed Rivera's administrative discharge packet and recommended that the Army Human Resources Command ("HRC") approve Rivera's discharge. Id. 168 (AR 163).

In November 2005, Rivera's superiors recommended that Rivera's request for voluntary retirement be denied. See id. 99, 101–02 (AR 94, 96–97). On January 3, 2006, Brigadier General Robert Woods, the Director of Enlisted Personnel, requested that the Assistant Secretary of the Army for Manpower and Reserve Affairs approve Rivera's discharge. Id. 167 (AR 162). On February 15, 2006, the HRC approved the involuntary separation of Rivera with an "Under Other Than Honorable Conditions discharge." Id. 32, 36 (AR 27, 31). On February 27, 2006, the Army officially discharged Rivera. Id. 42 (AR 37).

On September 21, 2006, Rivera requested a review of his discharge. Id. 147–48 (AR 142–43). Rivera argued that the board improperly relied on "limited use" information and that the Army should characterize his discharge as honorable. Id. Rivera also asserted that other "discriminating and prejudiced" evidence was wrongfully introduced, including an Army document from 1986 detailing his cocaine use. See id. 148 (AR 143).

On January 18, 2008, the Army Discharge Review Board ("ADRB") granted Rivera partial relief and upgraded the characterization of his discharge to honorable. Id. 33 (AR 28). The ADRB based its decision to change the characterization of the discharge on the government's introduction of "limited use information" at the separation hearing. Id. 36–37 (AR 31–32). The ADRB concluded that the separation itself was "fully supported by the record." Id.

On March 24, 2008, Rivera applied for a further correction of his military records and asked, among other things, for approval of retirement and a notation on his records that he served in Operation Enduring Freedom. Id. 68 (AR 63); cf. id. 127–30 (AR 122–25) (December 30, 2002 unit

4

deployment order to Iraq that includes Rivera). In his application, Rivera argued that he had been improperly extended past his ETS and had not been allowed to retire when he reached twenty years of service. Id. 69–70 (AR 64–65).

On August 6, 2008, the Army Board for Correction of Military Records ("ABCMR") denied Rivera's request for his military record to be changed. Id. 39 (AR 34). The ABCMR concluded that Rivera's "request for retirement was properly disapproved since he was being considered for separation due to a pattern of misconduct." Id. 44 (AR 39). Rivera was told he could "request reconsideration of this decision within one year" if he presented new evidence or argument that the ABCMR did not originally consider. Id. 39 (AR 34).

On March 23, 2012, Rivera applied to the Army Review Boards Agency for a review of his discharge and the August 6, 2008 ABCMR decision not to permit him to retire with years in service. Id. 47–48 (AR 42–43). Rivera asked "to be retired following twenty years of service, in the pay grade of E-4, with retroactive pay and benefits to February 27, 2006." Id. 48 (AR 43). Rivera claimed that he did not discover that the "decision of the ABCMR . . . was in error" until he spoke with a lawyer in October 2011. Id.

On December 16, 2012, the ABCMR denied Rivera's request for reconsideration. Id. 6 (AR 1). In its letter of denial, the ABCMR noted that Rivera's "request for reconsideration was not received within one year of the ABCMR's original decision." Id. The ABCMR notified Rivera that it would "not consider any further requests for reconsideration of this matter" but that Rivera had "the option to seek relief in a court of appropriate jurisdiction." Id. On July 30, 2014, Rivera filed the instant action. Compl. [D.E. 1].

II.

Defendant moved to dismiss the complaint for lack of subject-matter jurisdiction, pursuant

5

to Rule 12(b)(1) of the Federal Rules of Civil Procedure. [D.E. 17]; see Fed. R. Civ. P. 12(b)(1). Rivera must establish jurisdiction. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In reviewing a Rule 12(b)(1) motion, a court regards "the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact [concerning jurisdiction] exists." Richmond, 945 F.2d at 768.

Additionally, a suit against the federal government requires the plaintiff to prove a waiver of sovereign immunity, either by the Constitution or Congress's unequivocal consent. See Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 733–34 (1982); Mann v. Haigh, 120 F.3d 34, 37 (4th Cir. 1997); Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

Rivera contends that jurisdiction exists under numerous statutes, including the federal-question statute, 28 U.S.C. § 1331, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2). See Am. Compl. ¶ 1. Rivera also argues that the APA's waiver of sovereign immunity applies. Pl.'s Mem. [D.E. 21] 6. The APA permits private parties to sue the federal government to seek "relief other than money damages" for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704.

Defendant argues that the court lacks subject-matter jurisdiction to hear the complaint for two reasons: (1) Rivera's claim is effectively a claim under the Tucker Act, thereby precluding relief under the APA, and the relief requested exceeds the $10,000 threshold under which the court has

6

concurrent jurisdiction with the United States Court of Federal Claims ("Claims Court"), see 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); and (2) the Tucker Act's statute of limitations bars Rivera's claim. Def.'s Mem. [D.E. 18] 8–9. Thus, defendant argues, the United States has not waived its sovereign immunity in this case and the court lacks jurisdiction. Defendant also argues that the court lacks jurisdiction over Rivera's Rehabilitation Act claim. Def.'s Mem. 13–15. The court addresses each argument in turn.

A.

Rivera contends that he brought the suit under the APA, not the Tucker Act. To have jurisdiction over an APA claim, the court must find that (1) Rivera seeks relief other than money damages, and (2) there is no other adequate remedy in a court, including the Claims Court. See 5 U.S.C. §§ 702, 704; Bowen v. Massachusetts, 487 U.S. 879, 891 (1988); James v. Caldera, 159 F.3d 574, 578–79 (Fed. Cir. 1998). Rivera seeks "issuance of an injunction that [his] Military Records be corrected that he may receive the retirement due to him" and "any relief deemed just and proper." Am. Compl. 10. Defendant argues that the complaint is a "thinly veiled claim for retirement benefits" and that Rivera really seeks monetary damages in violation of section 702, and that the Claims Court offers an adequate remedy for the relief Rivera seeks, thus barring Rivera's APA claim under section 704. Def.'s Mem. 8–10.

1.

As for the first requirement, in Bowen, the Supreme Court explained the jurisdictional analysis underlying the APA. In that case, Massachusetts sought judicial review under the APA over the Secretary of Health and Human Services's decision to deny certain Medicaid payments to Massachusetts because the state's provision of mental-health services allegedly violated Department of Health and Human Services ("DHHS") regulations. Bowen, 487 U.S. at 885–87. After adverse

7

decisions at the trial and appellate levels, the Secretary sought and obtained Supreme Court review. Id. at 890. The Secretary argued to the Supreme Court that the Claims Court had exclusive jurisdiction over Massachusetts's claim under the Tucker Act. Id. at 890 & n.14.

In interpreting section 702's requirement that a claim under the APA not be for "money damages," the Court noted the "distinction between an action at law for damages . . . and an equitable action for specific relief . . . ." Id. at 892–93 (noting further that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages'"). The Court quoted extensively from Judge Robert Bork's opinion in Maryland Department of Human Resources v. Department of Health & Human Services, 763 F.2d 1441 (D.C. Cir. 1985), in which Judge Bork explained the difference between compensatory damages, which substitute for a suffered loss, and specific remedies, which "'give the plaintiff the very thing to which he was entitled.'" Bowen, 487 U.S. at 895. The Court held that section 702's exclusion for money damages did not include claims for specific relief, including monetary relief, where the plaintiff sought simply to enforce a statutory mandate. Id. at 900–01, 910 & n.48 ("[S]ince the [district court's] orders are for specific relief . . . rather than for money damages . . . they are within the District Court's jurisdiction under [section] 702's waiver of sovereign immunity.").

Rivera requests injunctive relief to correct his military records. See, e.g., Am. Compl. 10; 10 U.S.C. § 3914. Stated differently, Rivera requests specific relief for statutory benefits to which Rivera alleges he is entitled, not money or compensatory damages. See Schism v. United States, 316 F.3d 1259, 1268 (Fed. Cir. 2002) (en banc) (noting that military retirement benefits are statutory entitlements). As such, Rivera's request falls within section 702's waiver of sovereign immunity. See Bowen, 487 U.S. at 910; Tootle v. Sec'y of Navy, 446 F.3d 167, 173–75 (D.C. Cir. 2006) (finding that the plaintiff's claim was not "in essence" for money damages where, in part, the

8

plaintiff did not explicitly request monetary relief and any monetary relief that resulted from the judgment would come "from the structure of statutory and regulatory requirements governing compensation"); cf. Ulmet v. United States, 888 F.2d 1028, 1030–31 (4th Cir. 1989) (holding that, although the plaintiff's "request for an injunction or writ of mandamus merely disguises the true nature of the relief sought, which is back pay and benefits," the plaintiff sought "specific monetary relief as defined in Bowen").

Defendant cites Huff v. United States Department of the Army, 508 F. Supp. 2d 459, 464 (D. Md. 2007), for the proposition that "judicial review of [a] discharge primarily to fix the Army's liability for benefits" is "monetary in nature" and falls outside of section 702's waiver of immunity. Def.'s Mem. 9–10. In Huff, the plaintiff claimed that he had been wrongfully discharged and he sought back pay, disability and hospital benefits, and correction of his military records. Huff, 508 F. Supp. 2d at 461. The court construed these requests as falling under the Tucker Act. Id. at 462–63. The court then construed his request for judicial review of his discharge as falling under the APA. Id. at 464. The court concluded, without citing any precedent, that because "the gravamen of [plaintiff's] complaint suggests that his wrongful discharge . . . , combined with errors in his medical records, has prevented him from obtaining disability pay and other military benefits," it was a request for money damages and fell outside of section 702's waiver. Id.

In light of Bowen's holding that specific relief, including monetary relief by statutory mandate, is not "money damages" within the definition of section 702, this court respectfully disagrees with the Huff court's conclusion. Rivera seeks specific relief to have his military records corrected, not compensatory or substitute damages. To the extent Rivera may be entitled to monetary relief, Rivera seeks only "reimbursement to which [he] was allegedly already entitled, rather than money in compensation for losses suffered" as a result of the Army's refusal to grant him

9

plaintiff did not explicitly request monetary relief and any monetary relief that resulted from the judgment would come "from the structure of statutory and regulatory requirements governing compensation"); cf. Ulmet v. United States, 888 F.2d 1028, 1030–31 (4th Cir. 1989) (holding that, although the plaintiff's "request for an injunction or writ of mandamus merely disguises the true nature of the relief sought, which is back pay and benefits," the plaintiff sought "specific monetary relief as defined in Bowen").

Defendant cites Huff v. United States Department of the Army, 508 F. Supp. 2d 459, 464 (D. Md. 2007), for the proposition that "judicial review of [a] discharge primarily to fix the Army's liability for benefits" is "monetary in nature" and falls outside of section 702's waiver of immunity. Def.'s Mem. 9–10. In Huff, the plaintiff claimed that he had been wrongfully discharged and he sought back pay, disability and hospital benefits, and correction of his military records. Huff, 508 F. Supp. 2d at 461. The court construed these requests as falling under the Tucker Act. Id. at 462–63. The court then construed his request for judicial review of his discharge as falling under the APA. Id. at 464. The court concluded, without citing any precedent, that because "the gravamen of [plaintiff's] complaint suggests that his wrongful discharge . . . , combined with errors in his medical records, has prevented him from obtaining disability pay and other military benefits," it was a request for money damages and fell outside of section 702's waiver. Id.

In light of Bowen's holding that specific relief, including monetary relief by statutory mandate, is not "money damages" within the definition of section 702, this court respectfully disagrees with the Huff court's conclusion. Rivera seeks specific relief to have his military records corrected, not compensatory or substitute damages. To the extent Rivera may be entitled to monetary relief, Rivera seeks only "reimbursement to which [he] was allegedly already entitled, rather than money in compensation for losses suffered" as a result of the Army's refusal to grant him

9

retirement status. Ulmet, 888 F.2d at 1030. Thus, Rivera's claim falls within section 702's waiver of sovereign immunity.

2.

As for the second requirement, section 704 permits judicial review for "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. Defendant argues that the Claims Court provides an adequate remedy for Rivera, and therefore that this court cannot review Rivera's discharge under the APA. Def.'s Mem. 10. Under the Tucker Act, the Claims Court has exclusive jurisdiction for nontort monetary claims for more than $10,000 against the United States. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . for liquidated or unliquidated damages in cases not sounding in tort."); United States v. Hohri, 482 U.S. 64, 66 n.1 (1987); Randall v. United States, 95 F.3d 339, 347 (4th Cir. 1996). The Claims Court offers "precisely the kind of 'special and adequate review procedures' that are needed to remedy particular categories of past injuries . . . for which various federal statutes provide compensation." Bowen, 487 U.S. at 904 n.39.

Generally, the Claims Court cannot provide equitable relief. Bowen, 487 U.S. at 905 & n.40 ("The Claims Court does not have the general equitable powers of a district court to grant prospective relief."); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). Where, however, the Claims Court has proper jurisdiction over a nontort monetary claim under section 1491(a)(1), the Claims Court can "issue orders directing . . . placement in appropriate duty or retirement status, and correction of applicable records" if that order is necessary "[t]o provide an entire remedy and to complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2). For example, "the Claims Court may, in appropriate military back pay cases, 'provide an entire remedy,' including 'restoration to office or position, placement in appropriate duty or retirement status, and

10

correction of applicable records.'" Mitchell v. United States, 930 F.2d 893, 896 (Fed. Cir. 1991) (quoting 28 U.S.C. § 1491(a)(2)) (emphasis added). Thus, the Claims Court provides an adequate remedy for Rivera's claim and bars the court's jurisdiction under the APA only if Rivera's complaint presents a nontort monetary claim over which the Claims Court has jurisdiction under section 1491(a)(1).

In his complaint, Rivera requests "an injunction that [his] Military Records be corrected that he may receive the retirement due to him." Am. Comp. 10. Section 1491 states that "placement in appropriate . . . retirement status" is a remedy that the Claims Court may order "as an incident of and collateral to" the judgment for a nontort monetary claim that gives the Claims Court jurisdiction under the Tucker Act. See 28 U.S.C. § 1491(a)(2). Thus, the statute defining the Claims Court's jurisdiction specifically contemplates that a plaintiff's claim for a change in retirement status, which Rivera seeks, is not a nontort monetary claim that defines a Tucker Act claim.

In arguing that Rivera's complaint alleges a nontort monetary claim, defendant relies on Mitchell and federal district court cases that followed Mitchell. In Mitchell, the Federal Circuit reviewed a district court's denial of the government's motion to transfer the case to the Claims Court. Mitchell, 930 F.2d at 894. The plaintiff sought "active duty credit toward retirement, active duty back pay, reinstatement to active duty until properly retired, attorney fees, and any further just relief." Id. The government argued that the district court had no jurisdiction to hear the case under the APA because the Claims Court had sole jurisdiction under the Tucker Act. Id. The Mitchell court agreed and found that section 704 barred the plaintiff's APA action in the district court. Id. at 896. Specifically, the court noted that, because the plaintiff requested back pay, the Claims Court had authority to "provide an entire remedy" to the plaintiff. Id. at 896–97 ("Mitchell's claims include a request for back pay, which the Supreme Court places within the Claim Court's Tucker Act

11

jurisdiction."). Thus, regardless of whether the plaintiff's complaint fit within section 702's waiver, the Claims Court provided an adequate remedy for his claims and the district court had no jurisdiction under the APA. Id. at 897; see Huff, 508 F. Supp. 2d at 462, 464–65 (holding that the Claims Court offered an adequate remedy where the court construed the complaint as requesting back pay, reinstatement, and correction of military records); Reaves v. Hagel, No. 5:12-CV-795-FL, 2013 WL 5674981, at *7–8 (E.D.N.C. Oct. 17, 2013) (unpublished) (finding that the Claims Court provided an adequate remedy where the plaintiff sought back pay, medical disability retirement, and correction of military records).

Unlike those cases, which relied on a request for back pay as the statutory hook on which to hang Claims Court jurisdiction, any monetary relief to which Rivera may potentially be entitled must necessarily be preceded by the requested equitable relief. Unlike the cited cases, Rivera does not seek or need a credit enhancement (and the corresponding back pay) to substantiate his claim for retirement eligibility. On February 28, 2005, Rivera requested that he be released from active duty on February 28, 2006, and be allowed to retire on March 1, 2006. [D.E. 18-1] 17 (AR 12). Rivera reached twenty years of service by early February 2006. See id. 17, 20, 52 (AR 12, 15, 47) (noting ETS dates of January 31 and February 8, 2008, and a total time lost of seven days due to two periods in which Rivera was AWOL). At that time, he was eligible to retire. See 10 U.S.C. § 3914. On February 15, 2006—after Rivera was eligible to retire and he had submitted a request to retire—the HRC approved Rivera's discharge from the Army. [D.E. 18-1] 32 (AR 27). On February 27, 2006, the Army officially discharged Rivera. Id. 42 (AR 37).

The facts of this case differ crucially from those of the plaintiffs in Mitchell and James. In explaining the Mitchell court's reasoning, the Federal Circuit stated that "[t]he critical point is that Mitchell asserted that he was entitled to back pay because a statute . . . gave him the right to remain

12

on active duty until he had accrued twenty years of service and because he was entitled to be paid for the services he performed while on active duty." James, 159 F.3d at 583. Similarly, in James, the plaintiff arguably alleged that his immediate commanding officer's actions extended his enlistment for five months and that he was wrongfully discharged before that extended enlistment was up, creating a cause of action for back pay for those five months. Id. at 582 ("If James was wrongfully discharged before the end of his extended term of enlistment, his right to pay continued and served as the basis for Tucker Act jurisdiction."). Rivera's complaint is the opposite: the Army wrongfully extended his enlistment past the point of retirement eligibility to allow for administrative separation proceedings that would discharge him without retirement benefits, or the Army wrongfully discharged him rather than letting him retire. See, e.g., Am. Compl. ¶¶ 33–34; [D.E. 18-1] 13 (AR 8).² Moreover, Rivera's requested relief is not incidental to any other Tucker Act claim for nontort damages.

Because the Claims Court does not have jurisdiction (incidental or otherwise) over Rivera's claim, there is no other adequate remedy in a court and section 704 poses no bar to this court's jurisdiction.³ Accordingly, the court denies defendant's motion to dismiss Rivera's APA claims for lack of subject-matter jurisdiction.

_____

² The court declines to construe the complaint as implicitly containing a request for back pay for the one day between Rivera's allegedly wrongful discharge on February 27, 2006, and his original requested date of release from active duty on February 28, 2006. See 5 U.S.C. § 5596; Mitchell, 930 F.2d at 896.

³ In light of this decision, the court need not address defendant's second argument that the statute of limitations bars any Tucker Act claim.

13

B.

Defendant also contends that the court lacks subject-matter jurisdiction over Rivera's claims under section 504 of the Rehabilitation Act. Def.'s Mem. 13–15. Section 504 states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" in any program receiving federal financial assistance. 29 U.S.C. § 794(a). Rivera claims that the Army violated this statute when it discharged him despite evidence that he suffered from mental illness. Am. Compl. ¶¶ 35–38.

"[C]ourts of appeals have consistently refused to extend statutory remedies available to civilians to uniformed members of the armed forces absent a clear direction from Congress to do so." Coffman v. Michigan, 120 F.3d 57, 58–59 (6th Cir. 1997) (affirming a district court's ruling that an officer could not sue the Army under the Rehabilitation Act after he was involuntary discharged for his repeated failure to meet fitness standards). Congress has expressly authorized the military to retire or separate members of the armed forces who are "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability," suggesting that Congress intended to place active service personnel outside the Rehabilitation Act's ambit. 10 U.S.C. §§ 1201, 1203. Federal regulations implementing the grievance process under the Rehabilitation Act similarly exclude "[u]niformed members of the military departments," including the Army. 29 C.F.R. § 1614.103(d)(1); cf. 5 U.S.C. § 102.

The Fourth Circuit has not directly addressed whether a uniformed member of the military can bring a claim against the government under the Rehabilitation Act. In Randall, however, the Fourth Circuit held that a uniformed service member could not bring suit under Title VII. Randall, 95 F.3d at 343. In Middlebrooks v. Leavitt, 525 F.3d 341 (4th Cir. 2008), the Fourth Circuit further

14

stated that "uniformed members of the armed services . . . do not fall within the scope of the waiver of sovereign immunity contained in [section] 2000e-16." Middlebrooks, 525 F.3d at 344. Notably, the remedies for violating section 794 are explicitly tied to Title VI and not Title VII. See 29 U.S.C. § 794a(a)(2). Thus, the question turns on whether the same military exclusion, applicable to Title VII, also applies to section 794 of the Rehabilitation Act.

In Doe v. Garrett, 903 F.2d 1455 (11th Cir. 1990), the Eleventh Circuit considered whether a Naval reserve officer could bring a Rehabilitation Act claim when he was denied active duty status because of his HIV virus. Garrett, 903 F.2d at 1457–58. The district court held that the plaintiff could not proceed due to the "well-established caselaw excluding uniformed military personnel from protection under Title VII." Id. at 1458. The plaintiff challenged that holding on appeal, arguing that it was inappropriate for the district court to consider Title VII case law when section 794a(a)(2) tied the remedies for violations of section 794 to Title VI. Id. at 1459. The Eleventh Circuit noted that the courts of appeals that had found a private right of action against the federal government under section 794 all required a plaintiff to follow section 794a(a)(1), and thus Title VII, procedures. Id. at 1460. The Eleventh Circuit held that the district court properly consulted Title VII case law and applied the "military exception," concluding that "[plaintiff] has no remedy under the Rehabilitation Act." Id. at 1461–62.

In light of the military's statutory authority to retire or separate members of the armed forces with disabilities and the federal regulation that excludes uniformed members of the military from the Rehabilitation Act grievance process, Garrett's reasoning is compelling. Rivera's claims under the Rehabilitation Act flow from actions that occurred when he was a uniformed member of the Army. Accordingly, sovereign immunity bars Rivera's claims under the Rehabilitation Act.

15

In sum, Rivera properly seeks relief under the APA's waiver of sovereign immunity and the court has jurisdiction over his APA claims. The government has not waived its sovereign immunity, however, with respect to Rivera's Rehabilitation Act claims and the court has no jurisdiction to hear those claims.

III.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar

16

standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

The Rule 56(a) standard applies differently in an APA claim. "A court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Ohio Valley Envtl. Coal. v. Hurst, 604 F. Supp. 2d 860, 879 (S.D. W. Va. 2009) (quotation omitted); see Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985). Thus, in an APA claim, "summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Hurst, 604 F. Supp. 2d at 879 (quotation omitted); see Kight v. United States, 850 F. Supp. 2d 165, 169 (D.D.C. 2012).

Rivera's remaining claims center on alleged violations of the APA and the Due Process Clause of the Fifth Amendment. The court addresses each in turn.[4]

## A.

Under the APA, courts must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995) (quotation omitted); see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The

---

[4] Rivera's claims are justiciable because he alleges that the ABCMR violated military regulations and his constitutional rights, and Rivera has exhausted his intraservice corrective measures. See Wilt v. Gilmore, 62 F. App'x 484, 487 (4th Cir. 2003) (per curiam) (unpublished).

"inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Babbitt, 66 F.3d at 1335 (quotation omitted). Courts, however, "must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth., 647 F.3d 514, 517 (4th Cir. 2011) (quotation and alteration omitted). "Although the scope of review is narrow, the agency must nevertheless explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." Ohio River Valley Envtl. Coal., Inc. v. Kempthorne, 473 F.3d 94, 102–03 (4th Cir. 2006) (quotation omitted).

In the context of military boards, "decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." Chappell v. Wallace, 462 U.S. 296, 303 (1983); see Haselwander v. McHugh, 774 F.3d 990, 996 (D.C. Cir. 2014); Randall, 95 F.3d at 348 ("The district court's review of the ABCMR's decision is quite limited. . . . [S]uch decisions can be set aside only if they are arbitrary, capricious, or not based on substantial evidence." (quotation omitted)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted). If the court finds that a military board acted arbitrarily or capriciously, it may remand for further proceedings. See, e.g., Haselwander, 774 F.3d at 1000 (instructing the district court to remand the case to the ABCMR "for further proceedings consistent with this opinion"); Hill v. Geren, 597 F. Supp. 2d 23, 33–34 (D.D.C. 2009) (remanding the issue to the ABCMR "for further adjudication").

Rivera alleges that defendant acted arbitrarily and capriciously and violated the APA when the Army involuntarily separated him under Army Regulation 635-200, ¶ 14-12(b). See Am. Compl.

18

¶ 33; [D.E. 18-1] 168 (AR 163); Army Reg. 635-200 (2011), available at http://www.apd. army.mil/pdffiles/r635_200.pdf. In so doing, Rivera claims the Army violated Army Regulation 601-280, ¶ 3-16(e), which states that, under the "Indefinite Reenlistment Program," "[s]oldiers who have attained 18 years AFS will not be separated under provisions of AR 635-200, but will be permitted to retire on the first day of the month following the month they reach 20 years AFS." Army Reg. 601-280, ¶ 3-16(e) (2011), available at http://www.apd.army.mil/pdffiles/r601_280.pdf. Rivera argues that he had reenlisted for an indefinite period of time and had attained more than 18 years of active federal service, and thus that the Army's separation of him under Army Regulation 635-200 violated Army Regulation 601-280, ¶ 3-16(e)'s "sanctuary" provision.[5]

Defendant argues that the Army had authority to separate Rivera despite the sanctuary provision in Army Regulation 601-280, ¶ 3-16(e). See Def.'s Mem. 22. Defendant concedes that "soldiers who have attained over 18 years of service are afforded some additional protections from involuntary separation on the eve of their retirement" but contends that there "is certainly no absolute prohibition in Army Reg. 601-280 on separating a servicemember for his or her own misconduct." Id. Defendant cites two specific paragraphs in support. The first paragraph states that "[s]oldiers with less than 18 years AFS serving indefinite reenlistments . . . may serve to minimum retirement eligibility unless they are separated earlier under applicable administrative . . . or UCMJ separation

---

[5] Rivera's alternative argument—that the Army impermissibly retained him past his ETS in order to involuntarily separate him—fails because Rivera was serving an indefinite enlistment and therefore did not have an ETS. See Army Reg. 601-280 at 136 ("A soldier on indefinite status has no actual Expiration Term of Service (ETS) date. The soldier's service is governed by maximum Retention Control Points (RCP) (table 3-1) for the specific rank held."); [D.E. 18-1] 23 (AR 18) (showing that Rivera's March 20, 2002 enlistment was for an indefinite period of time). Moreover, regulations did not permit Rivera to retire until the first day of the month following his completion of 20 years of service, or March 1, 2006. Thus, the Army did not retain him past the date on which he could retire. Army Reg. 601-280, ¶ 3-16(e).

19

provisions." Army Reg. 601-280, ¶ 3-8(g)(2) (emphasis added). As the plain language of this paragraph states, it applies to servicemembers who have not attained 18 years of service and therefore did not reach the sanctuary provision in paragraph 3-16(e). Given Rivera's years of service, defendant's reliance on this section fails.

Defendant also cites Army Regulation 635-200, ¶ 2-12(c), which states, "[w]hen board action is completed on a Soldier with over 18 years of service, the findings and recommendations of the board, with complete documentation and the recommendation of the convening authority, will be forwarded to Headquarters . . . for final determination when the convening authority recommends discharge." Army Reg. 635-200, ¶ 2-12(c)(2). Defendant argues that this section explicitly contemplates that a servicemember with over 18 years of service may be discharged under Army Regulation 635-200. Other sections of Army Regulation 635-200 similarly suggest that the Army may separate a servicemember who has 18 years of service so long as the Army Headquarters approves it. See, e.g., Army Reg. 635-200, ¶¶ 1-14(b), 1-19(f), 2-5(d), 14-9(a)(3). Regulation 601-280, however, states that a soldier with 18 years of active duty service "will not be separated under provisions of AR 635-200." Army Reg. 601-280, ¶ 3-16(e).

The two regulations appear to conflict in the case of a servicemember who has reenlisted for an indefinite period of time and has attained 18 years or more of active federal service, as Rivera had. This court has not located (and the parties have not cited) any case exploring the interplay between these two regulations. Both regulations, however, rely on 10 U.S.C. § 1176 for statutory support concerning the possible separation of soldiers with 18 to 20 years of service. See Army Reg. 601-280, ¶ 1-6(e); Army Reg. 635-200, ¶ 1-5(n). In Ruffin v. United States, 509 F. App'x 978 (Fed. Cir. 2013) (per curiam) (unpublished), the plaintiff claimed that section 1176 protected him from involuntary separation because he was within two years of qualifying for retirement. Ruffin,

20

509 F. App'x at 980. The Federal Circuit disagreed and noted that section 1176 only protected those who were not discharged under adverse, or "other than honorable," conditions. Id. at 980–81; see also 10 U.S.C. § 1141. The court affirmed the Claims Court's denial of relief because the plaintiff had been discharged under adverse conditions. Id. at 981. Thus, Ruffin suggests that Army Regulation 601-280, ¶ 3-16(e) prohibits the separation under Army Regulation 635-200 of a servicemember, serving an indefinite enlistment, who has attained 18 years of active federal service unless the separation was under adverse conditions.

Here, the Army originally characterized Rivera's discharge as under "other than honorable" conditions. [D.E. 18-1] 52 (AR 47). On January 18, 2008, the ADRB changed his service characterization to "fully honorable." Id. 33–38 (AR 28–33). Thus, the case turns on whether the ADRB's decision to upgrade Rivera's service characterization invoked Army Regulation 601-280, ¶ 3-16(e)'s sanctuary provision. The logic of Ruffin and the structure of Army Regulation 601-280, ¶ 3-16(e) and Army Regulation 635-280 suggest that it did. The decisions of the ADRB and the ABCMR, however, failed to discuss this issue. See [D.E. 18-1] 33–38 (AR 28–33) (noting that the ADRB "found that the reason for the discharge was fully supported by the record and voted not to change it"); [D.E. 18-1] 62–67 (AR 57–62) (ABCMR decision stating that "the applicant's request for retirement was properly disapproved since he was being considered for separation due to a pattern of misconduct"). The boards failed to explain how their decisions to uphold Rivera's discharge under Army Regulation 635-200 after his discharge was upgraded to "honorable" complied with Army Regulation 601-280, ¶ 3-16(e), which expressly forbids separation under Army Regulation 635-200 for a servicemember in Rivera's circumstances.[6]

_____

[6] Defendant now argues that the ADRB improperly upgraded Rivera's discharge to honorable because no "limited use" evidence was used at his board hearing. Def.'s Mem. 15–18.

The boards' decisions were arbitrary and capricious in violation of the APA. The matter is remanded to the ABCMR to determine whether, in light of the ADRB's decision to upgrade Rivera's discharge to "honorable," the Army must correct Rivera's military record and retirement status to comply with 10 U.S.C § 1176 and Army Regulation 601-280, ¶ 3-16(e). The board should also reconsider its denial of Rivera's request for an amendment of his DD Form 214 to show that he served in Operation Enduring Freedom. [D.E. 18-1] 44 (AR 39); cf. [D.E. 18-1] 127–30 (AR 122–25). The board's speculation that Rivera "could have been determined non-deployable for a number of reasons and his name removed from the deployment order's annex" is not supported by substantial evidence in the record. Id. 44 (AR 39). Rather, the only evidence in the record supports Rivera's position. See id. 127–30 (AR 122–25) (deployment order); cf. id. 52 (AR 47) (noting that Rivera received an "overseas ribbon").

Rivera's additional arguments of regulatory violations are meritless. First, Rivera argues that the Army violated Army Regulation 635-200, ¶ 3-8 by looking at conduct from previous periods of enlistment. Am. Compl. ¶ 28. Army Regulation 635-200, ¶ 3-8 precludes the Army from using certain evidence when characterizing a soldier's service. The ADRB concluded that the separation board improperly used "limited use information" and then upgraded Rivera's discharge. Thus, the ADRB board awarded Rivera the prescribed remedy for a paragraph 3-8 violation. Army Reg. 635-200, ¶ 3-8(a). Accordingly, this claim is moot.

---

In the proceedings, however, the ABCMR merely noted that "the basis for that determination [that limited use evidence was presented] is not evident." [D.E. 18-1] 65 (AR 60). The ABCMR left the ADRB's determination unchanged. Defendant's post hoc explanations for why the ADRB improperly upgraded Rivera's discharge are unpersuasive. See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 50 ("The short—and sufficient—answer to petitioners' submission is that the courts may not accept appellate counsel's post hoc rationalizations for agency action.").

Second, Rivera argues that the Army violated Army Regulation 635-200, ¶ 2-5 when it refused to allow Rivera to waive the administrative board hearing. Am. Compl. ¶ 29. Army Regulation 635-200, ¶ 2-5 explicitly forbids waiver of the board hearing by a soldier with more than 18 years of active federal service, which Rivera had. Army Reg. 635-200, ¶ 2-5(d). Accordingly, this argument fails.

B.

Finally, Rivera contends that defendant violated his Fifth Amendment due process rights by failing to follow numerous provisions in Army Regulation 635-200. The court construes Rivera's constitutional claim as arising under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See, e.g., Wesley v. Adams, 144 F. App'x 989, 2005 WL 2417097, at *1 (4th Cir. 2005) (per curiam) (unpublished table decision) (affirming the district court's denial of the plaintiff's request for injunctive relief under Bivens); Phelps v. Hadden, 27 F.3d 563, 1994 WL 273945, at *1 (4th Cir. 1994) (per curiam) (unpublished table decision) ("[T]he district court properly construed [plaintiff's] action as one seeking injunctive relief pursuant to Bivens . . . ."); Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987) (citing Bivens as supporting the principle that a "district court possesses authority to order injunctive relief to remedy constitutional violations"). Rivera may not bring a Bivens claim against defendant for injuries that "arise out of or are in the course of activity incident to service." Randall, 95 F.3d at 344 (quoting United States v. Stanley, 483 U.S. 669, 684 (1987)). Rivera's constitutional claim arises out of his military service and is thus barred. The court grants defendant's motion for summary judgment on this claim.

IV.

In sum, the court DENIES IN PART and GRANTS IN PART defendant's motion for summary judgment [D.E. 17]. The court has subject-matter jurisdiction over Rivera's APA and

23

constitutional claims but not over Rivera's Rehabilitation Act claim. Furthermore, the court GRANTS IN PART Rivera's motion for summary judgment [D.E. 20] on his APA claims and REMANDS the matter to the ACBMR to determine whether, in light of the ADRB's decision to upgrade Rivera's discharge to "honorable," the Army properly followed Army Regulation 601-280, ¶ 3-16(e) when it denied Rivera's request to correct his military records and affirmed the Army's discharge of Rivera under Army Regulation 635-200, ¶ 14-12(b). The board should also reconsider its denial of Rivera's request for an amendment of his DD Form 214 to show that he served in Operation Enduring Freedom. Finally, the court GRANTS IN PART defendant's motion for summary judgment [D.E. 17] with respect to Rivera's Fifth Amendment due process claim.

SO ORDERED. This 3 day of June 2015.

JAMES C. DEVER III
Chief United States District Judge

24